UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

PATRICIA G. LAMAGRO,                :
                                    :
            Plaintiff               :        No. 3:11-CV-01506
                                    :
      vs.                           :        (Judge Kosik)
                                    :
MICHAEL J. ASTRUE,                  :
COMMISSIONER OF SOCIAL              :
SECURITY,                           :                **FILED**
                                    :             **SCRANTON**
            Defendant               :

                          MEMORANDUM          SEP 1 8 2012

                                              PER ___*M-6.L*___
BACKGROUND                                        DEPUTY CLERK

        The above-captioned action is one seeking review of a
decision of the Commissioner of Social Security ("Commissioner")
denying Plaintiff Patricia G. Lamagro's claim for social security
supplemental security income benefits.

        Supplemental security income is a federal income
supplement program funded by general tax revenues (not social
security taxes).  It is designed to help aged, blind or other
disabled individuals who have little or no income.

        Lamagro, who was born on January 13, 1962, is a United
States citizen, and at all times relevant to this matter was
considered a "younger individual"[1] whose age would not seriously
impact her ability to adjust to other work. 20 C.F.R. §

_____

1.  The Social Security regulations state that "[t]he term
younger individual is used to denote an individual 18 through
49."  20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1).

416.963(c). Tr. 38, 60, 71 and 328.[2]   Lamagro graduated from high
school in 1981 and can read, write, speak and understand the
English language and perform basic mathematical functions. Tr. 76,
81, 101 and 328-329.   During her elementary and secondary
schooling Lamagro attended regular education classes. Tr. 81.
Lamagro has a driver's license. Tr. 328.   At the administrative
hearing held in this case on March 18, 2010, Lamagro testified
that she can drive but does not like to. Tr. 328.

       Lamagro has a very limited work and earnings history.
Tr. 65 and 87.   She has past relevant work experience[3] as a
cashier and dental assistant. Tr. 18 and 340.   A vocational expert
described the cashier position as unskilled, light work and the
dental assistant position as skilled, light work.[4]    Tr. 340.

---

2.   References to "Tr.___" are to pages of the administrative
record filed by the Defendant as part of his Answer on October
18, 2011.

3.   Past relevant employment in the present case means work
performed by Lamagro during the 15 years prior to the date her
claim for disability was adjudicated by the Commissioner.   20
C.F.R. §§ 404.1560 and 404.1565.

4.   The terms sedentary and light work are defined in the
regulations of the Social Security Administration as follows:

          (a) *Sedentary work*. Sedentary work involves lifting no
          more than 10 pounds at a time and occasionally lifting
          or carrying articles like docket files, ledgers, and
          small tools.   Although a sedentary job is defined as
          one which involves sitting, a certain amount of walking
          and standing is often necessary in carrying out job
          duties.   Jobs are sedentary if walking and standing are
          required occasionally and other sedentary criteria are
          met.
                                        (continued...)

2

Records of the Social Security Administration reveal that Lamagro had earnings in the years 1981 through 1985, 1991, 1992, 1994, 1995, 2001, 2004 and 2005. Tr. 65.  Lamagro's total earnings during those years were $24,153,87. Id.  Lamagro's highest annual earnings were in 1984 ($6959.03). Id.  In 2005, Lamagro apparently only worked for one week and earned $177.68. Tr. 65 and 87.  Lamagro has not worked since 2005. Id.

Lamagro claims that she became disabled on September 1, 2008,[5] because of a heart condition; degenerative disc disease causing back and leg pain; obesity;[6]  high blood pressure; carpal tunnel syndrome; and an anxiety disorder. Tr. 40, 77 and 329; Doc. 10, Plaintiff's Brief, p. 1.  Lamagro also claims that she has

---

4.    (...continued)
          (b) *Light work*.  Light work involves lifting no more
          than 20 pounds at a time with frequent lifting or
          carrying of objects weighing up to 10 pounds.  Even
          though the weight lifted may be very little, a job is
          in this category when it requires a good deal of
          walking or standing, or when it involves sitting most
          of the time with some pushing and pulling of arm or leg
          controls.  To be considered capable of performing a
          full or wide range of light work, you must have the
          ability to do substantially all of these activities.
          If someone can do light work, we determine that he or
          she can also do sedentary work, unless there are
          additional limiting factors such as loss of fine
          dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567.

5.  Lamagro was 46 years of age on the alleged disability onset
date.

6.  The record reveals that Lamagro is 5 feet, 5 inches tall, and
her weight has fluctuated between 234 and 264 pounds. Tr. 76 and
328.

sleep apnea, edema in the knees and irritable bowel syndrome. Tr. 218 and 329. She claims that her back pain is constant and that she cannot sit or stand for long periods of time. Tr. 77 and 329-330.

On September 26, 2008, Lamagro was interviewed face-to-face by K. Wilcox, an employee of the Social Security Administration, who reported that he observed no problem with Lamagro hearing, reading, breathing, understanding, concentrating, talking, answering questions, sitting, standing, walking, seeing, using her hands and writing. Tr. 85-86. In a "Function Report - Adult" dated October 10, 2008, Lamagro when asked to check items which her "illnesses, injuries, or conditions affect" did not check reaching, talking, hearing, seeing, memory, concentration, understanding, following instructions, using hands and getting along with others. Tr. 103. Lamagro in March, 2010, also stated that she had no problem taking care of personal needs such as dressing and bathing. Tr. 334.

On September 15, 2008, Lamagro protectively filed[7] an application for supplemental security income benefits. Tr. 12, 38, 60-63 and 83. As stated above, Lamagro asserted that the onset of her disability was September 1, 2008. The alleged disability

---

7.  Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits.  A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

onset date has no impact on Lamagro's application for supplemental security income benefits because supplemental security income is a needs based program and benefits may not be paid for "any period that precedes the first month following the date on which an application is filed or, if later, the first month following the date all conditions for eligibility are met." See C.F.R. § 416.501.  Consequently, Lamagro is not eligible for SSI benefits for any period prior to October 1, 2008.

On January 1, 2009, the Bureau of Disability Determination[8] denied Lamagro's application for supplemental security income benefits. Tr. 12 and 40-44.  On January 23, 2009, Lamagro requested a hearing before an administrative law judge. Tr. 45.   Approximately 14 months later, a hearing commenced on March 18, 2010, before an administrative law judge. Tr. 323-342. On April 1, 2010, the administrative law judge issued a decision denying Lamagro's application. Tr. 12-20.  On April 23, 2010, Lamagro requested that the Appeals Council review the administrative law judge's decision. Tr. 7-8.  After a little over 14 months had passed, the Appeals Council on July 6, 2011, concluded that there was no basis upon which to grant Lamagro's request for review. Tr. 4-6.  Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

_____

8.   The Bureau of Disability Determination is an agency of the state which initially evaluates applications for supplemental security income benefits on behalf of the Social Security Administration.   Tr. 41.

5

Lamagro then filed a complaint in this court on August 15, 2011. Supporting and opposing briefs were submitted and the appeal[9] became ripe for disposition on February 21, 2012, when Lamagro elected not to file a reply brief.

**Standard of Review**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court

9. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

if supported by substantial evidence."); <u>Keefe v. Shalala</u>, 71
F.3d 1060, 1062 (2d Cir. 1995); <u>Mastro v. Apfel</u>, 270 F.3d 171, 176
(4th Cir. 2001); <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 & 1529
n.11 (11th Cir. 1990).

　　　　　Substantial evidence "does not mean a large or
considerable amount of evidence, but 'rather such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion.'" <u>Pierce v. Underwood</u>, 487 U.S. 552, 565
(1988)(quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197,
229 (1938)); <u>Johnson v. Commissioner of Social Security</u>, 529 F.3d
198, 200 (3d Cir. 2008); <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360
(3d Cir. 1999).  Substantial evidence has been described as more
than a mere scintilla of evidence but less than a preponderance.
<u>Brown</u>, 845 F.2d at 1213.  In an adequately developed factual
record, substantial evidence may be "something less than the
weight of the evidence, and the possibility of drawing two
inconsistent conclusions from the evidence does not prevent an
administrative agency's finding from being supported by
substantial evidence." <u>Consolo v. Federal Maritime Commission</u>, 383
U.S. 607, 620 (1966).

　　　　　Substantial evidence exists only "in relationship to all
the other evidence in the record," <u>Cotter</u>, 642 F.2d at 706, and
"must take into account whatever in the record fairly detracts
from its weight." <u>Universal Camera Corp. v. N.L.R.B.</u>, 340 U.S.
474, 488 (1971).  A single piece of evidence is not substantial

evidence if the Commissioner ignores countervailing evidence or
fails to resolve a conflict created by the evidence.  Mason, 994
F.2d at 1064.  The Commissioner must indicate which evidence was
accepted, which evidence was rejected, and the reasons for
rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642
F.2d at 706-707.  Therefore, a court reviewing the decision of the
Commissioner must scrutinize the record as a whole.  Smith v.
Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v.
Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must
demonstrate an "inability to engage in any substantial gainful
activity by reason of any medically determinable physical or
mental impairment which can be expected to result in death or
which has lasted or can be expected to last for a continuous
period of not less than 12 months."  42 U.S.C. § 432(d)(1)(A).
Furthermore,

> [a]n individual shall be determined to be under a
> disability only if his physical or mental impairment
> or impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of
> whether such work exists in the immediate area in which
> he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for
> work.  For purposes of the preceding sentence (with
> respect to any individual), "work which exists in the
> national economy" means work which exists in significant
> numbers either in the region where such individual
> lives or in several regions of the country.

8

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating supplemental security income claims.  See 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92.  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[10] (2) has an impairment that is severe or a combination of impairments that is severe,[11] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[12] (4) has the

---

10.  If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit."  20 C.F.R. § 416.910.

11.  The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two.  Id.  If a claimant has any severe impairments, the evaluation process continues.  20 C.F.R. § 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process.  20 C.F.R. §§ 416.923 and 416.945(a)(2).

12.  If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled.  If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step. 20 C.F.R. § 404.1525 explains that the listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless
(continued...)

residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id.  As part of step four, the administrative law judge must determine the claimant's residual functional capacity. Id.

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.  See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule.  The residual functional capacity assessment must include a discussion of the individual's abilities.  Id; 20 C.F.R. § 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**Discussion**

The administrative law judge at step one of the sequential evaluation process found that Lamagro had not engaged

---

12.  (...continued)
of his or her age, education, or work experience."  Section 404.1525 also explains that if an impairment does not meet or medically equal the criteria of a listing, an applicant for benefits may still be found disabled at a later step in the sequential evaluation process.

in substantial gainful work activity since September 15, 2008, the application date. Tr. 14.

At step two of the sequential evaluation process, the administrative law judge found that Lamagro had the following severe impairments: "degenerative disc disease, obesity and anxiety disorder." Id.

At step three of the sequential evaluation process, the administrative law judge found that Lamagro's impairments did not individually or in combination meet or equal a listed impairment. Tr. 14-15.

At step four of the sequential evaluation process, the administrative law judge found that Lamagro had the residual functional capacity to engage in a limited range of unskilled, light work.  Tr. 15.  Lamagro was limited to work that did not require kneeling, crawling or crouching and only occasional bending and stooping. Tr. 15-16.  She was further limited to simple, routine, repetitive tasks that involve only simple work decisions and judgment. Tr. 16.

Based on the above stated residual functional capacity and the testimony of a vocational expert, the administrative law judge found that Lamagro could perform her prior relevant work as a cashier, but also found at step 5 of the sequential evaluation process that there were other jobs which Lamagro could perform.

11

Tr. 18-19. The vocational expert identified the jobs of usher, counter attendant, and deli worker which Lamagro could perform, and stated that there were a significant number of such jobs in the regional, state and national economies. Tr. 19.

In setting the residual functional capacity, the administrative law judge relied on the opinion of James J. Cunningham, Ed.D., a state agency psychologist, who on December 26, 2008, reviewed Lamagro's medical records and found that Lamagro suffered from an adjustment disorder with a depressed mood causing some moderate limitations, but was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from her impairment." Tr. 190. The administrative law judge also relied on the January 6, 2009, opinion of Theodore C. Waldron, D.O., a state agency physician, who reviewed Lamagro's medical records. Tr. 191-196. Dr. Waldron found that Lamagro had the residual functional capacity to engage in a limited range of light work.

The administrative record in this case is 342 pages in length, primarily consisting of medical and vocational records. Lamagro argues that the administrative law judge erred (1) when he failed to properly consider and explain why he was rejecting the opinion of Constance Sweet, M.D., a treating physician, and an MRI dated August 18, 2008, and (2) when he failed to present a

12

hypothetical question to the vocational expert which identified
all of Lamagro's impairments and limitations as indicated in the
record.  We have thoroughly reviewed the record in this case and
find no merit in Lamagro's arguments.

The administrative law judge did an adequate job of
reviewing Lamagro's vocational history and medical records in his
decision. Tr. 12-20.  Furthermore, the brief submitted by the
Commissioner thoroughly reviews the medical and vocational
evidence in this case. Doc. 11, Brief of Defendant.  Because the
administrative law judge adequately reviewed the medical evidence
in his decision, we will only comment on a few items.

Initially, we will note that no treating physician,
psychiatrist or psychologist has indicated that Lamagro suffered
from mental or physical functional limitations that would preclude
her from engaging in the limited range of work set by the
administrative law judge in his decision for the requisite
statutory 12 month period.[13]  Dr. Sweet did not provide such a
statement, but instead a conclusory form opinion which does not
specify Lamagro's exertional and non-exertional abilities and

---

13.  As stated earlier in this memorandum to receive disability
benefits, the plaintiff must demonstrate an "inability to engage
in any substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to last
for a continuous period of not less than 12 months."  42 U.S.C. §
432(d)(1)(A).

limitations.[14] Tr. 155-156.  Furthermore, the form completed by
Dr. Sweet is undated but most likely was signed on August 28,
2008, prior to Lamagro's alleged disability onset date because
Lamagro signed the form on August 19, 2008, and Dr. Sweet examined
Lamagro on August 28, 2008.  Tr. 155 and 217.

In the form document completed by Dr. Sweet on or about
August 28, 2008, she indicates that Lamagro is temporarily
disabled for 12 months or more because of low back pain, high
blood pressure, gastroesophageal reflux disease and sleep apnea.
However, the physical examination findings on August 28, 2008,
were completely normal and unsupportive of Dr. Sweet's opinion.
Tr. 217.  Dr. Sweet noted no abnormal physical examination
findings.[15] Id.  Lamagro had normal vital signs; she had a normal
general appearance;  her eyes were normal; her cardiorespiratory
system was normal; and she had full range of motion in the

---

14.  The exertional abilities are the strength demands of a given
type of work.  Strength demands are the person's capacity to sit,
walk, stand, lift, carry, push and pull. 20 C.F.R. § 404.1569a.
Non-exertional limitations are the abilities to meet the demands
of jobs other than the strength demands. Id.  These non-
exertional limitations include difficulty performing postural
functions such as stooping, climbing, crawling, crouching and
reaching. Id.  They also include environment limitations such as
the need to avoid exposure to fumes, odors, dusts, gases, poor
ventilation and hazards such as machinery and heights. Id.

15.  Dr. Sweet uses a "check-box" examination form.  Abnormal
findings are designated by inserting an "x" in a box and a normal
finding by inserting a "√" in a box. Tr. 217.

extremities. Id.  Lamagro's blood pressure was 126/86. Id.
Likewise, the physical examination forms completed by Dr. Sweet at
appointments on November 3 and December 3, 2008, and March 30 and
September 15, 2009,  do not reveal any abnormal findings. Tr. 212
and 214-216.

As for the claim that the administrative law judge did
not address the MRI of August 18, 2008, there was no MRI performed
on August 18th.  The MRI was performed on August 14, 2008, which
revealed bulging discs at L3-4, L4-5 and L5-S1 but no herniated
discs, significant encroachment on intervertebral foramina or
spinal stenosis. Tr. 170.

On December 15, 2008, Lamagro was examined by Deryck
Brown, M.D., on behalf of the Bureau of Disability Determination.
Tr. 135-138.  Dr. Brown reviewed the MRI of August 14, 2008, and
opined that it did not demonstrate a cause for Lamagro's
complaints of "bilateral sciatica."[16] Tr. 136.  Dr. Brown further
stated that his physical examination of Lamagro revealed that she
had normal range of motion in all joints except the left hip. Tr.

---

16.  Sciatica is defined as "a syndrome characterized by pain
radiating from the back into the buttock and along the posterior
or lateral aspect of the lower limb; it is most often caused by
protrusion of a lumbar intervertebral disk[.]" Dorland's
Illustrated Medical Dictionary, 1678 (32nd  Ed. 2012).

137.  Hip range of motion was reduced to 70 degrees.[17] Id.
Lamagro had normal range of motion of the lumbar spine and her
hands were "totally normal." Id.  Dr. Brown noted that Lamagro's
"gait was not affected[.]" Tr. 137-138.

The administrative law judge specifically referred to
the MRI of August 14, 2008, in his decision when explaining why he
rejected Dr. Sweet's conclusory opinion that Lamagro was disabled.
Tr. 17 and 170.  Specifically, the administrative law judge stated
as follows:

> Dr. Constance Sweet is the claimant's treating
> physician. Dr. Sweet opined that the claimant was
> temporarily disabled on August 19, 2008 due to her
> multiple impairments. Her treatment records include
> complaints of low back pain beginning in July 2008
> that radiates into the claimant's left leg; however,
> an MRI of the lumbar spine revealed no spinal stenosis
> or abnormalities. (sic) Dr. Sweet noted the claimant's
> medications include Lexapro, Benicar, Prilosec,
> Neurontin and Relafen.  Additionally diagnoses
> include depression and anxiety, carpal tunnel
> syndrome, sleep apnea and migratory pain.  On
> December 2, 2008, Dr. Sweet reported that the
> claimant had mild degenerative disc disease and
> hypertension which is under control with medication.
> The claimant was referred to the Pain Management
> Clinic where epidural steroid injections were
> recommended; however, the claimant refused this
> treatment.

---

17.  Dr. Brown appears to be referring to Lamagro's hip flexion.
"Lower extremity ranges of motion for the hip include 120 to 130
degrees of flexion, 10 to 20 degrees of extension, 45 degrees of
abduction away from the body, 30 degrees of adduction toward
body, 45 degrees of internal rotation, and 50 degrees of external
rotation." Normal Human Range of Motion, Livestrong.com,
http://www.livestrong.com/article/257162-normal-human-range-of-mo
tion/ (Last accessed September 14, 2012).

> The claimant returned to treatment at Northern Tier
> Counseling in January 2010. She was diagnosed with
> anxiety disorder and a global assessment of
> functioning of 55.[18]  The record does not contain any
> evidence from this source.
>
> As for the opinion evidence, the undersigned cannot
> assign significant weight to the opinion expressed by
> Dr. Constance Sweet that the claimant is temporarily
> disabled as this is not supported by the overall
> objective medical evidence of record, including
> diagnostic testing.  The claimant's complaints of
> carpal tunnel syndrome are not supported by testing.
> Her complaints of radicular pain are not supported by
> objective testing.  Additionally, the claimant has a
> lengthy gap in her treatment at Northern Tier
> Counseling from January 2008 until she returned in
> January 2010. It should be noted that she was
> originally discharged from Northern Tier due to
> non-compliance with treatment.

Tr. 17-18 (internal citations to the record omitted).  The

administrative law judge went on to note that the opinions of the

state agency medical and psychological consultants were persuasive

evidence of Lamagro's ability to engage in work. Tr. 18.

---

18.  The Diagnostic and Statistical Manual of Mental Disorders
uses a multiaxial approach in diagnosing mental disorders. The
GAF score allows a clinician to indicate his judgment of a
person's overall psychological, social and occupational
functioning, in order to assess the person's mental health
illness.  *Diagnostic and Statistical Manual of Mental Disorders*
3-32 (4th ed. 1994). A GAF score is set within a particular range
if either the symptom severity or the level of functioning falls
within that range. Id. The score is useful in planning treatment
and predicting outcomes. Id.  A GAF score of 41-50 indicates
serious symptoms or any serious impairment in social,
occupational or school functioning. Id.  A GAF score of 51 to 60
represents moderate symptoms or any moderate difficulty in
social, occupational, or school functioning. Id.

The medical opinion of a treating physician as to the nature and severity of an impairment is only entitled to controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the case. 20 C.F.R. § 404.1527(d). In this case, the administrative law judge adequately explained why he rejected the opinion of Dr. Sweet.

The administrative law judge appropriately took into account Lamagro's moderate mental limitations in the residual functional capacity assessment. The administrative law judge limited Lamagro to unskilled work, work involving simple, routine, repetitive tasks and only simple work decisions and judgment. Tr. 16. The vocational expert identified jobs that met those requirements and the administrative law judge appropriately accepted the vocational expert's testimony.

The administrative law judge stated that Lamagro's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent that they were inconsistent with the ability to perform a limited range of unskilled, light work. Tr. 17. The administrative law judge was not required to accept Lamagro's subjective claims regarding her mental and physical limitations. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)(providing that credibility determinations as to a claimant's testimony regarding the

claimant's limitations are for the administrative law judge to make).  It is well-established that "an [administrative law judge's] findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the administrative law judge] is charged with the duty of observing a witness's demeanor . . . ."  Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991)("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess the witness credibility.").  Because the administrative law judge observed Lamagro when she testified at the hearing on March 18, 2010, the administrative law judge is the one best suited to assess the credibility of Lamagro.

Finally, Lamagro's argument that the administrative law judge erred when he failed to present an appropriate hypothetical question to the vocational expert needs only a brief comment.  An administrative law judge is only required to ask a hypothetical question which contains a claimant's credibly established limitations. Rutherford v. Barnhart, 399 f.3d 546, 555 (3d Cir. 2005).  The hypothetical question presented to the vocational expert encompassed all the limitations/restrictions contained within the ultimate residual functional capacity set by the ALJ. That residual functional capacity is supported by substantial

19

evidence.  No additional restrictions were necessary to account
for Lamagro's other impairments because Dr. Sweet's clinical notes
show that Lamagro's blood pressure was under control, a CPAP
machine improved her sleep apnea, there was no objective medical
evidence that her gastrointestinal reflux disease caused work-
related functional limitations and to the extent that she had
edema in a lower extremity it was of short duration and controlled
by medication.[19]  Tr. 306.  Also, Lamagro's mental limitations were
adequately addressed in the hypothetical.  Furthermore, counsel
who represented Lamagro at the administrative hearing and
represents Lamagro in the present appeal was asked by the
administrative law judge if he had any further questions and
stated that he did not.  Tr. 341.

> Our review of the administrative record reveals that the
decision of the Commissioner is supported by substantial evidence.
We will, therefore, pursuant to 42 U.S.C. § 405(g), affirm the
decision of the Commissioner.

> An appropriate order will be entered.

---

19.  On November 3, 2008, Dr. Sweet's treatment notes indicate
that Lamagro had normal range of motion in her lower extremities
without edema. Tr. 307. Dr. Sweet uses the symbol of a circle
with a line through the center to note that Lamagro was "without"
edema. Id.  On December 3, 2008, Dr. Sweet noted that the edema
was stable. Tr. 306. Furthermore, there is no evidence of a work-
related functional limitation resulting from the edema.